# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| EDDIN DANIEL ICO-CHOC, | ) | Case No. 4:26-cv-1042 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Carmen E. Henderson |
| KEVIN RAYCRAFT, Detroit Field | ) | |
| Office Director, Immigration and | ) | |
| Customs Enforcement and Removal | ) | |
| Operations, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## ORDER

On May 5, 2026, Petitioner Eddin Daniel Ico-Choc, a citizen and national of
Guatemala who is a member of the indigenous Maya K'iche' Christian community,
petitioned for a writ of habeas corpus seeking to prevent his removal to the United
States.  Mr. Ico-Choc fled Guatemala after the Mara 18 gang murdered his
grandfather and entered the United States at the end of 2018.  In March 2026, the
immigration authorities took Mr. Ico-Choc into custody and ordered removed from
the United States.  For the following reasons, the Court **DISMISSES** the petition
**WITHOUT PREJUDICE**.

## STATEMENT OF FACTS

According to Petitioner, Mr. Ico-Choc fled Guatemala after members of the
Mara 18 gang killed his grandfather. (ECF No. 1-1, ¶ 2, PageID #10.)  Following his
killing, gang members reportedly sought out Mr. Ico-Choc and threatened his life.

(*Id.*) These events caused Mr. Ico-Choc to flee Guatemala, and he entered the United States illegally on December 20, 2018. (*Id.*)

On March 17, 2026, Mr. Ico-Choc was a passenger with three co-workers in a vehicle traveling through Seneca County, Ohio to Michigan. (*Id.*, ¶ 26, PageID #14; *id.*, ¶ 3, PageID #10.) At a gas station, a sheriff's deputy allegedly stopped the vehicle without reasonable suspicion and ordered the driver out of the vehicle. (*Id.,* ¶ 26, PageID #14.) Agents from Immigration and Customs Enforcement arrived a short time later and arrested Mr. Ico-Choc and others. (*Id.*; *id.*, ¶ 4, PageID #10–11.) Mr. Ico-Choc has been detained in the Northern District of Ohio pending his removal from the United States. (*Id.*, ¶ 5, PageID #11; *id.*, ¶ 28, PageID #14.) On April 21, 2026, an immigration judge ordered the removal of Mr. Ico-Choc from the United States. (*Id.*, ¶ 30, PageID #15.) He is pursuing relief with the Board of Immigration Appeals. (*Id.*)

## STATEMENT OF THE CASE

On May 5, 2026, with the assistance of counsel (who is not admitted to practice in the Northern District of Ohio), Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) He alleges that his arrest violates the Fourth Amendment and exceeds the statutory and regulatory authority for civil immigration arrests. Also, he challenges his detention without an individualized bond hearing under the Fifth Amendment's Due Process Clause and alleges that it violates the Immigration and Nationality Act.

## ANALYSIS

Under 28 U.S.C. § 2243, a court shall forthwith issue a writ or order the respondent to show cause why a writ should not issue, "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus.  This statute requires an initial screening of a petition.  *See Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).  At this stage of the proceedings, a court accepts as true the allegations in the petition and construes them in favor of the petitioner.  *Id.*  "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition."  Rule 4 of the Rules Governing Section 2254 Cases (applicable to petitions under Section 2241 through Rule 1(b)).

## I.      Prudential Exhaustion

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the [habeas] petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted).  In *Leonardo*, the petitioner pursued habeas review of the Immigration Court's adverse bond determination before he appealed to the Board of Immigration Appeals.  *Id.*  The Ninth Circuit determined that filing a habeas petition in federal district court was improper because the petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision."  *Id.* (citing *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003)).

The Sixth Circuit has endorsed this procedure for challenging bond determinations, albeit in a short, unpublished order.  *See Rabi v. Sessions*, No. 19-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160); *see also Hernandez Torrealba*, 2025 WL 2444114, at *8 (applying the Ninth Circuit's test for prudential exhaustion).  Previously, the Court has done so as well.  *See Tecum Pastor v. Director of Detroit Field Off., U.S. Immigr. & Customs Enf't*, 814 F. Supp. 3d 875, 881 (N.D. Ohio 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Laguna Espinoza v. Director of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025); *Ba*, 2025 WL 2977712, at *2.

In this case, Mr. Ico-Choc has available to him an appeal to the Board of Immigration Appeals.  As in *Leonardo*, 646 F.3d at 1160, prudential principles of exhaustion counsel that Petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus.  In his petition, Mr. Ico-Choc alleges violations of the Immigration and Nationality Act.  Though couched in the language of due process under the Fifth Amendment, it also invites review of the process due under the statute and its associated procedures.  In other words, any determination regarding detention here turns on interpretation and application of the governing removal regime.

In the first instance, such review should proceed before the Board of Immigration Appeals to "apply its experience and expertise without judicial interference." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (abrogated on other

4

grounds); *see also Rojas-Garcia* , 39 F.3d at 819 (acknowledging that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"); *Monroy Villalta*, 794 F. Supp. 3d at 531; *Laguna Espinoza*, 2025 WL 2878173, at \*2; *Ba*, 2025 WL 2977712, at \*2.

## II.    Futility

Petitioner makes no argument that exhaustion of his appeals through the administrative process is futile.  And for good reason.  Courts in this Circuit have determined that even where there is a "high probability of denial" of a petitioner's appeal of an Immigration Judge's bond decision, such a probability "does not weigh in favor of waiving exhaustion."  *Hernandez Torrealba*, 2025 WL 2444114, at \*11.  Indeed, the acting Attorney General remains free to exercise his discretion to use an appeal to the Board of Immigration Appeals to change or modify the policies about which Petitioner complains.

In *Hernandez Torrealba*, the petitioner sought relief from the exhaustion requirement based on a decision of the Board of Immigration Appeals affirming the denial of bond.  But the court was "not certain how the BIA will rule on Petitioner's appeal given the particular circumstances of her case, and it would be presumptuous of this Court to simply assume that the BIA will rule against Petitioner."  *Id.*  So too here.   Petitioner presents relevant background of Mr. Ico-Choc that appears particularly sympathetic.  For this reason, his case might well prove to be one in which the agency changes or refines its policies through agency adjudication.  That prerogative belongs in the first instance to the agency, which also has the knowledge

and ability and to adopt policies that are more tailored to the statutory scheme it is tasked with implementing in a way that courts are not.

"[M]any of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance.'" *Hernandez Torrealba*, 2025 WL 2444114, at *11 (quoting *Beharry*, 329 F.3d at 62). Indeed, courts outside this Circuit acknowledge that the purposes of requiring exhaustion in the immigration context "include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry*, 329 F.3d at 62 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *McKart v. United States*, 395 U.S. 185, 193–95 (1969)).

For these reasons, the Court cannot say that exhaustion is futile or a waste of time or that prudential reasons apply for excusing it. To the contrary, it promotes judicial restraint, separates the powers and proper roles of the agency and the courts in the administrative regime Congress created, and reserves judicial review from decisions of the agency for the Sixth Circuit.

## CONCLUSION

For these reasons, the Court **DISMISSES** the petition for a writ of habeas corpus **WITHOUT PREJUDICE**.

**SO ORDERED.**

6

Dated:  June 24, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio